## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT PIERCE DIVISION

ASHLEY MOODY, on behalf of the
State of Florida and its citizens,

    *Plaintiff*,

    v.                          Case No. 2:24-cv-14365

DEANNE CRISWELL, Administrator
of the Federal Emergency Management
Agency, in her individual capacity; and
MARN'I WASHINGTON, in her
individual capacity,

    *Defendants*.

_____/

## COMPLAINT AND JURY TRIAL DEMAND

1.    "[A]void homes advertising Trump."[1]

2.    This was the directive that Defendant Marn'i Washington gave to federal relief workers responding to Hurricanes Helene and Milton in Lake Placid, Florida.

3.    While the Federal Emergency Management Agency (FEMA) has fired Defendant Washington and called her behavior "reprehensible,"[2] Defendant Washington insists that she is a "patsy" and that FEMA made her a "scapegoat."[3]

---

[1]   https://www.dailywire.com/news/exclusive-fema-official-ordered-relief-workers-to-skip-houses-with-trump-signs.

[2] https://www.cbsnews.com/news/fema-employee-fired-telling-workers-to-ignore-trump-supporters-homes-hurricane-relief/.

[3]   https://www.washingtonexaminer.com/news/white-house/3225155/fema-supervisor-who-told-team-to-avoid-homes-with-trump-signs-speaks-out/.

4.      Defendant Washington says that similar conduct occurred in North Carolina and throughout areas affected by Hurricanes Helene and Milton.[4] And she represents that senior FEMA officials claiming not to know that the agency was discriminating against Trump supporters are promoting a "lie."[5]

5.      While the facts will continue to come out over the weeks and months, it is already clear that Defendant Washington conspired with senior FEMA officials, as well as those carrying out her orders, to violate the civil rights of Florida citizens.

6.      This conspiracy is actionable under 42 U.S.C. § 1985, which creates a cause of action for "[c]onspiracy to interfere with civil rights." *See Smith v. Meese*, 821 F.2d 1484, 1492 n.5 (11th Cir. 1987) (suggesting that "selectively enforc[ing] a law" by "prosecuting only Republicans" would violate § 1985 (quotations omitted)); *accord Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1338 (11th Cir. 1999) (en banc) (discussing legislative history suggesting that "actionable conspiracies" under § 1985 "would include those against a person because he was a Democrat" (quotations omitted)); *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983) (suggesting that § 1985(3) "was intended to" protect "Republicans" because Republicans "championed the[] cause" of Black Americans after the Civil War).

---

[4] https://x.com/frankdescushin/status/1856167596501905783?s=46.

[5] https://x.com/frankdescushin/status/1856167596501905783?s=46.

7.    Florida Attorney General Ashley Moody sues Defendants under
§ 1985(3). *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982)
(recognizing a State's ability to sue in a *parens patriae* capacity based on discrimination
against its residents); *Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 38–40 (2d Cir. 1982)
(applying *Alfred L. Snapp* to a claim under § 1985(3)), *vacated in part on other grounds*,
718 F.2d 22, 25 (2d Cir. 1983).

8.    General Moody seeks nominal damages, punitive damages, and a
declaration that Defendants conspired to interfere with the civil rights of Florida
citizens.

## PARTIES

9.    Plaintiff Ashley Moody is the Attorney General and Chief Legal Officer
of the State of Florida. She is authorized to represent the interests of the State in civil
suits. § 16.01(4), (5), Fla. Stat.

10.    Defendant Deanne Criswell is the Administrator of the Federal
Emergency Management Agency (FEMA).

11.    Defendant Marn'i Washington was at times relevant to this action a
supervisor at FEMA responsible for managing aid workers in Lake Placid, Florida.

## JURISDICTION AND VENUE

12.    General Moody sues Defendants under 42 U.S.C. § 1985(3) for
conspiring to interfere with civil rights.

13.    Suits asserting an unlawful conspiracy under § 1985(3), by their nature,
are suits against the relevant defendants in their *personal* rather than *official* capacities.

3

*See Fuqua v. Turner*, 996 F.3d 1140, 1157 (11th Cir. 2021) (explaining that "a § 1985(3) claim [is not] cognizable as an official-capacity claim").

14. General Moody seeks declaratory relief under 28 U.S.C. §§ 2201–02.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

16. Venue lies in this district and division because a substantial part of the events or omissions giving rise to the claims occurred in Highlands County, Florida. 28 U.S.C. § 1391(b)(2), (e)(1).

## BACKGROUND

### Factual Background

17. Hurricane Helene made landfall in Florida on September 26, 2024.

18. Hurricane Milton made landfall in Florida on October 9, 2024.

19. The effects of these hurricanes have been devastating to the citizens of Florida and many other States. Some citizens were hit by both hurricanes back-to-back.

20. As Florida's officials worked with local governments, non-profit organizations, and its people to recover and rebuild, FEMA workers were instructed to deny aid to Trump supporters.

21.     Specifically, Defendant Washington, a FEMA supervisor responsible for a survivor assistance team in Lake Placid, Florida, told her team to "avoid homes advertising Trump."[6]

22.     FEMA workers followed these instructions and entered in a government database messages such as "Trump sign no entry per leadership."[7]

23.     According to whistleblowers, "at least 20 homes with Trump signs or flags" in Lake Placid, Florida "were skipped from the end of October and into November due to the guidance."[8]

24.     Those following these unlawful instructions included not just FEMA workers but employees of other federal agencies working with FEMA.[9]

25.     Immediately after details of this discrimination became public, Defendant Criswell fired Defendant Washington, calling her behavior "reprehensible."[10]

---

[6]    https://www.dailywire.com/news/exclusive-fema-official-ordered-relief-workers-to-skip-houses-with-trump-signs.

[7]    https://www.dailywire.com/news/exclusive-fema-official-ordered-relief-workers-to-skip-houses-with-trump-signs.

[8]    https://www.dailywire.com/news/exclusive-fema-official-ordered-relief-workers-to-skip-houses-with-trump-signs.

[9]       https://www.dailymail.co.uk/news/article-14061691/fema-official-hurricane-milton-relief-workers-avoid-trump-sign-homes.html.

[10]    https://www.fema.gov/press-release/20241109/statement-fema-administrator-deanne-criswell-employee-misconduct.

26.     Defendant Washington, however, insists that she is a "patsy" and that FEMA made her a "scapegoat."[11]

27.     She says that FEMA officials engaged in similar behavior in the Carolinas and throughout affected areas.[12] And she represents that senior FEMA officials claiming not to know that the agency was discriminating against Trump supporters are promoting a "lie."[13]

## Legal Background

### 42 U.S.C. § 1985

28.     Section 1985 provides legal recourse against "[c]onspirac[ies] to interfere with civil rights."

29.     Relevant to this case are two clauses in subsection (3) of § 1985, commonly referred to as the "deprivation clause" and the "support or advocacy clause." General Moody brings claims under both clauses.

### The Deprivation Clause

30.     The deprivation clause governs conspiracies "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *See Dean v. Warren*, 12 F.4th 1248,

---

[11] https://www.washingtonexaminer.com/news/white-house/3225155/fema-supervisor-who-told-team-to-avoid-homes-with-trump-signs-speaks-out/.

[12] https://x.com/frankdescushin/status/1856167596501905783?s=46.

[13] https://x.com/frankdescushin/status/1856167596501905783?s=46.

1257 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) (quoting 42 U.S.C. § 1985(3))).

31.    A claim under the deprivation clause requires a plaintiff to prove four things: (1) the existence of a conspiracy, (2) made for the purpose of directly or indirectly depriving a person or class of persons of equal protection of the law or of the equal privileges or immunities of the law, (3) an act in furtherance of the conspiracy, and (4) injury to a person or their property or the deprivation of a right or privilege to a citizen. *See Griffin*, 403 U.S at 102–03.

32.    As to element one, "proof of" a conspiracy is "an essential element" of a cause of action under § 1985(3). *See United States ex el. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976).[14]

33.    In determining the existence of a conspiracy under § 1985(3), courts require a plaintiff to show "two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *See Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (quoting *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir.1983)).

34.    Notably, a conspiracy under § 1985(3) generally may not consist merely of persons within the same legal entity—whether a private corporation or a

---

[14] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard Ala.*, 661 F.2d 1206, 1209 (11th Circ. 1981).

government agency—under a doctrine known as the "intracorporate conspiracy doctrine." *See Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).

35.     Even though both Defendants were at relevant times employed by the same federal agency, FEMA, the intracorporate conspiracy doctrine does not apply here for several reasons.

36.     First, the Eleventh Circuit has recognized that a county and a state agency are not a single corporate entity under the intracorporate conspiracy doctrine, *see id.* at 768, even though counties and state agencies are both arms of the State, *see Weaver v. Heidtman*, 245 So. 2d 295, 296 (Fla. 1st DCA 1971). By analogy, therefore, federal officials of different agencies are likely not protected by the intracorporate conspiracy doctrine.

37.     Here, as detailed above, employees from other federal agencies participated in the conspiracy. *See* ¶ 24.

38.     Second, the intracorporate conspiracy doctrine does not apply when "agents act outside the scope of their employment." *Dickerson*, 200 F.3d at 770. Here, Defendant Criswell admits that discriminating against Trump supporters would be "a clear violation of FEMA's core values and principles."[15]

---

[15]     https://www.fema.gov/press-release/20241109/statement-fema-administrator-deanne-criswell-employee-misconduct.

39.     Third, the doctrine also does not apply when agents "engage in a series of discriminatory acts as opposed to a single action" as occurred here. *Dickerson*, 200 F.3d at 770.

40.     Finally, the Eleventh Circuit's suggestion in *Dickerson* that a conspiracy among multiple members of the same federal agency is not actionable under § 1985(3) is in substantial tension with *Meese*, which endorsed the legal sufficiency of a § 1985(3) claim against several employees of the Department of Justice. *See Meese*, 821 F.2d at 1486.

41.     Under the second prong of the deprivation clause, a plaintiff must prove that the conspiracy is "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *See Dean*, 12 F.4th at 1255 n.8. This includes a requirement that the conspiracy target a protected class or group. *United Bhd. of Carpenters*, 463 U.S. at 836.

42.     While the most common application of this requirement is to racial animus, animus towards other groups qualifies, including the type of discrimination that occurred here.

43.     The Supreme Court has expressly recognized that the "class-based animus" requirement of the deprivation clause is satisfied when the animus is against "Republicans." *United Bhd. of Carpenters*, 463 U.S. at 835–36. The Court reached that conclusion because Republicans "championed the[] cause" of Black

Americans after the Civil War, *id.*, and § 1985(3) was enacted during Reconstruction "to protect Republicans [from] the Klan's conspiratorial activities," *id.* at 835.

44.     To be sure, the Supreme Court declined to decide whether animus based on political views would suffice in all circumstances. *See id.* at 836–838. And the Eleventh Circuit in *Dean* similarly declined to address the question, while noting a circuit split on the issue. *See Dean*, 12 F.4th at 1263.

45.     The Supreme Court's discussion of discrimination against Republicans in *United Board of Carpenters* resolves this case. It is worth noting, however, that the Eleventh Circuit has twice signaled that the deprivation clause broadly protects against animus based on political affiliation.

46.     First, in *Meese*, the Eleventh Circuit reversed a district court order dismissing a complaint for bad faith prosecution filed under § 1985(3) and found that allegations of "widespread violation of the associational and political rights" of a group were sufficient to state a claim for relief. *See Meese*, 821 F.2d at 1492. The court went so far as to recognize the principle that "the government cannot selectively enforce a law by prosecuting only Republicans, or only Caucasians, or only Southerners who violate the law." *Id.* at 1492 n.5.

47.     Second, in *Lyes*, the *en banc* court held that women were a protected class under § 1985(3). 166 F.3d at 1339. In doing so, the court suggested that the text of § 1985(3) applies more broadly than the Equal Protection Clause itself. *Id.* at 1337 (noting that "the word 'any' has an expansive meaning" (quotations omitted)); *see also*

*id.* at 1338 (reviewing legislative history that indicated that "some members of Congress believed actionable conspiracies would include those against a person because he was a Democrat" (quotations omitted)).

48.     Under the third prong of the deprivation clause, the plaintiff must prove an act in furtherance of the conspiracy. *See Griffin*, 403 U.S. at 102–03. Such acts must be overt. *See Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959). The purpose of this requirement "is to show that the agreeing or conspiring has progressed from the field of thought and talk into action." *Id.*

49.     Finally, the plaintiff must prove injury to a person or their property or the deprivation of a right or privilege to a citizen. *See Griffin*, 403 U.S. at 103.

The Support or Advocacy Clause

50.     The support or advocacy clause applies when "two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy." *See* 42 U.S.C. § 1985(3).

51.     Relevant to this case is the latter part of this clause, which prohibits conspiracies to "injure any citizen in person or property on account of . . . support or advocacy" for "any lawfully qualified person as an elector for President." *Id.*

52.     There is a dearth of case law interpreting the support or advocacy clause. *See* Richard Primus & Cameron O. Kistler, The Support-or-Advocacy Clauses, 89

11

Fordham L. Rev. 145, 146 (2020) (explaining that the provision was "all but forgotten during the twentieth century").

53.     On its face, the clause prohibits conspiracies (1) to injure a citizen in person or property, (2) because of the giving of support or advocacy in a legal manner, (3) for a candidate for specified offices, including President of the United States. 42 U.S.C. § 1985(3).

54.     The support or advocacy clause contains no animus requirement similar to the requirement in the deprivation clause. *See Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1346 (N.D. Ga. 2023) (explaining that "the support-or-advocacy clauses by their plain language do not require discriminatory animus").

<u>The State's Ability to Enforce § 1985(3)</u>

55.     The U.S. Supreme Court has recognized that States may sue in a *parens patriae* capacity on behalf of their citizens to prevent unlawful discrimination. *See Alfred L. Snapp*, 458 at 607; *see Abrams*, 695 F.2d at 38–40 (applying *Alfred L. Snapp* to suits under § 1985).

56.     In order to bring such a suit, "the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party." *Alfred L. Snapp*, 458 at 607. To satisfy that requirement, "[t]he State must express a quasi-sovereign interest." *Id.*

57.     The Court in *Alfred L. Snapp* recognized two such interests.

58.     "First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.*

59.     "Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.*

60.     Both interests apply here. Denying Florida residents disaster relief based on political affiliation and advocacy threatens their health and well-being.

61.     Similarly, these actions deny Florida its place in the federal system because Florida residents disproportionately support President Trump. For example, Florida voters supported President Trump in the most recent election by a 13-point margin.

## CLAIMS

## <u>COUNT 1</u>

### Violation of 42 U.S.C. § 1985(3) – Deprivation Clause

### (All Defendants)

62.     General Moody repeats and incorporates by reference ¶¶ 1–61.

63.     As detailed above, the allegations in this Complaint satisfy all four elements of the deprivation clause.

64.     First, Defendants agreed with each other, and others, to deny Trump supporters emergency relief. To the extent Defendant Criswell denies this, Defendant Washington asserts that she is lying.

65.     Further, the intracorporate conspiracy doctrine is no defense because members of the conspiracy came from multiple federal agencies, Defendants acted outside the scope of employment, and Defendants engaged in a series of discriminatory acts rather than a single action.

66.     Second, the discriminatory denial of emergency aid qualifies as the denial of equal protection or equal privileges. Most important, the class-based animus requirement is satisfied for the reasons explained above.

67.     Third, Defendants committed an overt act because they carried out their conspiracy by declining, or having their subordinates decline, to visit the homes of Trump supporters.

68.     Fourth, the denial of emergency aid qualifies as injury to a person or their property or the deprivation of a right or privilege. In addition to the loss of aid itself, the affected citizens were deprived of their First Amendment rights. *United Bhd. of Carpenters*, 463 U.S. at 830 (recognizing that "an alleged conspiracy to infringe First Amendment rights" is sufficient under § 1985(3) if "the [government] is involved in the conspiracy").

## COUNT 2

### Violation of 42 U.S.C. § 1985(3) – Support or Advocacy Clause
### (All Defendants)

69.     General Moody repeats and incorporates by reference ¶¶ 1–61.

70.     For similar reasons, the allegations in this Complaint satisfy all three elements of the support or advocacy clause.

71.     First, for the reasons explained in Count 1, Defendants entered into an agreement to injure Florida citizens in their person or property.

72.     Second, that denial was based on the giving of support or advocacy in a legal manner—namely the displaying of signs and other symbols of support.

73.   Third, that support or advocacy was in favor of Donald J. Trump, who was then the Republican Party's candidate for President.

74.   Finally, as discussed, the support or advocacy clause contains no animus requirement. And even if there were such a requirement, it would be satisfied for the same reasons as in Count 1.

## PRAYER FOR RELIEF

For these reasons, General Moody asks the Court to:

a)  Declare that Defendants conspired to interfere with the civil rights of Trump supporters in Florida in violation of the deprivation clause of 42 U.S.C. § 1985(3).

b)  Declare that Defendants conspired to interfere with the civil rights of Trump supporters in Florida in violation of the support or advocacy clause of 42 U.S.C. § 1985(3).

c)  Award nominal damages against Defendants.

d)  Award punitive damages against Defendants.

e)  Award costs and reasonable attorney's fees.

f)  Award such other relief as the Court deems equitable and just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Ashley Moody demands a trial by jury of all issues properly triable to a jury in this case.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival (FBN 1016188)
CHIEF OF STAFF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Christine K. Pratt (FBN 100351)
COUNSELOR TO THE ATTORNEY GENERAL

Caleb A. Stephens (FBN 1050554)
COUNSELOR TO THE ATTORNEY GENERAL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for Plaintiff Ashley Moody*