IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | | |
|---|---|---|
| JAMES UTHMEIER, on behalf of the State of Florida and its citizens, | ) ) ) | Case No. 2:24-cv-14365-DMM |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| DEANNE CRISWELL, Administrator of the Federal Emergency Management Agency, in her individual capacity; and MARN'I WASHINGTON, in her individual capacity, | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

## NOTICE OF DISMISSAL WITH PREJUDICE

Under Federal Rule of Civil Procedure 41(a)(1)(A)(i)—and in light of a settlement reached in this matter, *see* Ex. 1 (Stipulation for Compromise Settlement and Release); Ex. 2 (letter)—Plaintiff hereby dismisses this action with prejudice.

Respectfully submitted,

JAMES UTHMEIER
*Attorney General*

JEFFREY PAUL DESOUSA
*Acting Solicitor General*

DAVID M. COSTELLO
*Chief Deputy Solicitor General*

KEVIN A. GOLEMBIEWSKI

*Senior Deputy Solicitor General*

ALLEN L. HUANG
*Deputy Solicitor General*

CALEB STEPHENS
*Assistant Solicitor General*

/s/ Christine Pratt
CHRISTINE PRATT (FBN 0100351)
*Assistant Solicitor General*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
christine.pratt@myfloridalegal.com

*Counsel for the Florida Attorney General*

DATED:  April 28, 2025

**CERTIFICATE OF SERVICE**

  I hereby certify that, on April 28, 2025, I served the foregoing Notice of Dismissal With Prejudice on (1) counsel for all represented parties by electronic means through the Court's Case Management/Electronic Case File system, and (2) Defendant Washington (*pro se*) via email at expmanager@live.com.

             /s/ Christine Pratt
             CHRISTINE PRATT
             *Counsel for the Florida Attorney General*

# Ex. 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT PIERCE DIVISION

| | |
|---|---|
| JAMES UTHMEIER, on behalf of the State of Florida and its citizens, ) ) ) | Case No. 2:24-cv-14365-DMM |
| Plaintiff, ) ) ) | |
| v. ) ) | |
| DEANNE CRISWELL, Administrator of the Federal Emergency Management Agency, in her individual capacity; and MARN'I WASHINGTON, in her individual capacity, ) ) ) ) ) ) ) | |
| Defendants ) ) | |

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE

Plaintiff James Uthmeier and Defendant Deane Criswell hereby stipulate and agree as follows:

1. Plaintiff agrees that, in exchange for a letter on behalf of the United States Government, the contents of which have been agreed to between Plaintiff and the United States Department of Justice on behalf of the Federal Emergency Management Agency ("FEMA"), Plaintiff shall file a notice of dismissal with prejudice under Federal Rule of Civil Procedure 41(a) no later than April 28, 2025. Plaintiff hereby releases Defendant Criswell from any and all claims in connection with the events giving rise to this action. In consideration for Plaintiff's agreement to dismiss this action, Defendant Criswell agrees and hereby releases Plaintiff, the State of Florida, and its agencies, officers, and employees from

any claim for relief she might have in connection with the institution, prosecution, and dismissal of this action.

2. This Stipulation for Compromise Settlement and Release is not an admission of liability or fault on the part of Defendant Criswell or the United States Government and is entered into for the purpose of compromising and resolving this action and thereby avoiding the expenses and risks of further litigation.

3. Plaintiff and Defendant Criswell agree that each will bear their own costs, attorney's fees, and any other fees and expenses in connection with the litigation of this action.

4. This Stipulation for Compromise Settlement and Release contains the entire settlement agreement between the parties, who acknowledge that there are no warranties, promises, representations, terms, conditions, or obligations other than those contained in this Stipulation.  Any prior statements, representations, promises, agreements, understandings, conversations, communications, or negotiations, oral or otherwise, between the parties or their counsel, are merged into this Stipulation and have no force or effect.

5. This Stipulation for Compromise Settlement and Release may be executed in several counterparts, with a separate signature page for each party or attorney acting on a party's behalf.  All such counterparts and signature pages, together, shall be deemed to be one document.  Plaintiff and Defendant Criswell further agree that a copy of the fully executed Stipulation for Compromise Settlement and Release shall have the same legal effect and shall be equally enforceable at law or in equity as the original fully executed Stipulation.

6. If any provision of this Stipulation for Compromise Settlement and Release is to any extent invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Executed this 28th day of April, 2025.

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director
Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel
Torts Branch, Civil Division

JEREMY BRUMBELOW
Digitally signed by JEREMY BRUMBELOW
Date: 2025.04.28 07:05:05 -04'00'

_____
JEREMY SCOTT BRUMBELOW
Arkansas Bar No. 96145
Senior Trial Attorney
Torts Branch, Civil Division
Tel. (202) 616-4330; jeremy.brumbelow@usdoj.gov

JULIANA MACPHERSON BARRETT
Trial Attorney
Torts Branch, Civil Division
Tel. (202) 616-4326; Juliana.M.Barrett@usdoj.gov

UNITED STATES DEPARTMENT OF JUSTICE
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Fax. (202) 616-4314

*Counsel for Defendant Criswell*

3

JAMES UTHMEIER
*Attorney General*

JEFFREY PAUL DESOUSA
*Acting Solicitor General*

DAVID M. COSTELLO
*Chief Deputy Solicitor General*

KEVIN A. GOLEMBIEWSKI
*Senior Deputy Solicitor General*

ALLEN L. HUANG
*Deputy Solicitor General*

CALEB STEPHENS
*Assistant Solicitor General*

Christine Pratt
Digitally signed by Christine Pratt
Date: 2025.04.28 07:26:00 -04'00'
_____
CHRISTINE PRATT (FBN 0100351)
*Assistant Solicitor General*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
*christine.pratt@myfloridalegal.com*

*Counsel for the Florida Attorney General*

DATED:  April 28, 2025

4

# Ex. 2



**United States Department of Justice**

Civil Division, Torts Branch
Constitutional & Specialized Tort Litigation
Washington, D.C.

CSD:RM:JSBrumbelow

April 28, 2025

**VIA EMAIL**

James Uthmeier
Attorney General of the State of Florida
Tallahassee, Florida

    *Attn*:  Christine Pratt, Assistant Solicitor General
           Christine.Pratt@myfloridalegal.com

    *Re*:  *Moody v. Criswell, et al.*, No. 2:24-cv-14365-DMM (S.D. Fla.)

Dear General Uthmeier:

    This is to follow up on the telephone call between Civil Division Senior Trial Attorney Jeremy Brumbelow and Assistant Solicitor General Christine Pratt regarding this case. Mr. Brumbelow and Ms. Pratt discussed the possibility of resolving this action without further litigation through a voluntary dismissal under Federal Rule of Civil Procedure 41. Toward that end, Ms. Pratt requested certain information in the conversation with Mr. Brumbelow. Having discussed that request with our client, Ms. Criswell—and with counsel from the Federal Emergency Management Agency ("FEMA")—we are authorized to share the information set forth below, which FEMA has provided to us, to resolve the case expeditiously under Rule 41.

I.

    First, your office asked if FEMA, a non-party to the litigation, would be willing to provide information about the underlying incident. FEMA counsel have authorized us to relay these facts to your office as a resolution of this case under Rule 41:

    1. In October 2024, following Hurricanes Helene and Milton, Defendant Marn'i Washington led a FEMA Disaster Survivor Assistance team in Lake Placid, Florida, and directed her team both verbally and in writing to avoid homes advertising support for then Presidential candidate Donald J. Trump.

      2.  After Ms. Washington directed her team to avoid certain homes (including through a Microsoft Teams chat message stating that the team should "avoid homes advertising Trump"), FEMA leadership in Washington, D.C., learned of Ms. Washington's conduct through a whistleblower complaint filed by a member of Ms. Washington's team on or about October 28, 2024. Because of Ms. Washington's conduct, FEMA terminated her employment on or around November 9, 2024 (an action that Ms. Criswell directed).

      3.  The FEMA Office of Professional Responsibility ("OPR") opened an investigation into this matter. As we understand from FEMA counsel, OPR has concluded its investigation.

      4.  In recent responses to congressional inquiries about this matter, Cameron Hamilton (the senior official performing the duties of the FEMA Administrator) has commented on the results of the OPR investigation. *See*, *e.g.*, Ltr. of Mar. 4, 2025, from Mr. Hamilton to the Honorable Vern Buchanan (Florida Dist. 16), U.S. House of Representatives (available at Tab 1 and [here](#)). The OPR investigation resulted in FEMA terminating the employment of three additional FEMA employees, and the investigation "found no evidence that this was a systemic problem, nor that it was directed by agency or field leadership." *Id*. Additionally, Mr. Hamilton advised that he has "directed a comprehensive additional training for FEMA staff to reinforce that political affiliation should never be a consideration in the rendering of assistance." *Id*.

      5.  On October 28, 2024, FEMA referred Ms. Washington's conduct to the Department of Homeland Security, Office of Inspector General ("DHS-OIG") for an investigation. In between the two House of Representatives committee hearings at which she testified in person on November 19, 2024, Ms. Criswell sent a memorandum to DHS-OIG, requesting that it investigate FEMA's delivery of disaster survivor assistance for Hurricanes Helene and Milton to determine whether FEMA denied such assistance "to supporters of President-elect Trump, the scope of any such denial, and whether any such denial resulted from systemic or widespread mismanagement and misconduct." Tab 2. On December 17, 2024, DHS-OIG notified FEMA that it will initiate an audit of FEMA's assessment of community trends. As we also understand from FEMA, DHS-OIG announced on February 2, 2025, in response to a request from Congress, that it will conduct an audit of whether FEMA followed its policies and procedures regarding safety concerns and determining community trends impacting disaster survivor assistance following Hurricanes Helene and Milton.

      6.  The matter of Ms. Washington's conduct was also referred to the Office of Special Counsel on October 28, 2024. On February 11, 2025, that office filed with

the U.S. Merit Systems Protection Board a Complaint for Disciplinary Action against Ms. Washington, alleging a Hatch Act[1] violation by her. Tab 3.

## II.

Second, Ms. Criswell has authorized us to state on her behalf that she believes that Ms. Washington's conduct in this matter was wrong and unacceptable. Indeed, Ms. Criswell has expressed that same view, consistently, in her public statements about this matter since learning of Ms. Washington's conduct.

For example, your complaint (Compl. at 5, ¶ 25 n.10) mentions the official press release that Ms. Criswell issued on FEMA letterhead on November 9, 2024, and which we hyperlink here and attach at Tab 4 ("Statement from FEMA Administrator Deanne Criswell on Employee Misconduct," Release No. HQ-24-304). In that press release, Ms. Criswell referred to "one FEMA employee" (Ms. Washington) who had "advise[d] her survivor assistance team" not to "go to homes with yard signs supporting President-elect Trump." Ms. Criswell described Ms. Washington's conduct as "reprehensible" and "a clear violation of FEMA's core values and principles to help people regardless of their political affiliation." *Id.* Ms. Criswell concluded the press release as follows:

> I want to be clear to all of my employees and the American people, this type of behavior and action will not be tolerated at FEMA and we will hold people accountable if they violate these standards of conduct.
>
> We take our mission to help everyone before, during and after disasters seriously. This employee has been terminated and we have referred the matter to the Office of Special Counsel. I will continue to do everything I can to make sure this never happens again.

*Id.*

Similarly, in an email to all FEMA employees on November 12, 2024, Ms. Criswell reminded them that the agency's work (1) "is not, has never been, and should never be partisan" (as "emergencies and disasters don't respect geographic or political boundaries"); and (2) "requires a special level of trust with all communities" that "must transcend politics and political affiliations." Tab 5. In that email, Ms. Criswell also exhorted the "entire" FEMA "team to recommit to our agency's core values of compassion, fairness, integrity, and respect" and "ensure we continue to put people—all people—first in everything we do." She emphasized that "[a]nything

---

[1] The Hatch Act, a federal law passed in 1939, limits certain political activities of federal employees, as well as some state, D.C., and local government employees who work in connection with federally funded programs. Among other things, the law's purpose is to ensure that federal programs are administered in a nonpartisan fashion.

less will simply not be tolerated." And she advised that "additional trainings" would be held "for our field staff to reinforce our mission and commitment to helping all people." *Id.*

To like effect was Ms. Criswell's testimony about this matter on November 19, 2025, in hearings before two committees of the United States House of Representatives (*i.e.*, the Committee on Oversight & Accountability, and the Committee on Transportation & Infrastructure). We do not have transcripts of that testimony. But Ms. Criswell's committee appearances can be viewed [here](#) and [here](#) or by copy-pasting into an Internet browser the websites listed in the margin below.[2] In her testimony, Ms. Criswell unequivocally denounced Ms. Washington's actions. Ms. Criswell also confirmed that (1) senior FEMA officials did not instruct FEMA staff to deny or withhold disaster assistance to hurricane survivors based on political affiliation; (2) there is no FEMA policy to that effect; (3) Ms. Criswell is unaware of anyone besides Ms. Washington engaging in this sort of conduct; and (4) Ms. Criswell "concurred" in, and actually "directed," the termination of Ms. Washington's employment with FEMA after her conduct came to light.[3]

As the information provided above shows, it is clear that Ms. Criswell does not approve of, or condone, Ms. Washington's actions in Florida following Hurricanes Helene and Milton. To the contrary, she has condemned those actions and took corrective steps during her time in office.

III.

FEMA continues to be committed to ensuring its employees follow federal law and FEMA policy when administering aid to Americans affected by disaster. FEMA provides the following information regarding its commitment:

---

[2] *See* U.S. House Committee on Oversight & Accountability, Oversight of the Federal Emergency Management Agency, https://oversight.house.gov/hearing/oversight-of-the-federal-emergency-management-agency/, & U.S. House Committee on Transportation & Infrastructure, In the Eye of the Storm: Oversight of FEMA's Disaster Readiness and Response, https://transportation.house.gov/calendar/eventsingle.aspx?EventID=407865.

[3] For examples of Ms. Criswell's testimony on these points, please see the following time-stamps on the videos available at the websites listed above in note 2: Committee on Oversight & Accountability (1:02:37 to 1:04:55; 1:11:17 to 1:12:42; 1:13:20 to 1:15:28; 1:18:04 to 1:18:10; 1:45:20 to 1:47:54; 2:00:37 to 2:03:11; 2:22:05 to 2:23:11; 3:53:33 to 3:56:38; 4:03:43 to 4:04:01; 4:06:00 to 4:06:23; 4:31:30 to 4:32:58), and Committee on Transportation & Infrastructure (1:09:38 to 1:11:52; 1:12:55 to 1:14:05; 1:14:36 to 1:14:55; 1:16:20 to 1:16:30; 1:17:07 to 1:17:22; 2:17:58 to 2:18:23; 2:19:07 to 2:19:18; 2:22:53 to 2:24:30; 2:28:28 to 2:29:40; 2:30:40 to 2:30:48; 2:39:43 to 2:42:46).

- All FEMA employees are expected to follow the Hatch Act. "For purposes of the Hatch Act, political activity is defined as activity directed at success or failure of a…, partisan political group, or candidate for partisan political office." *FEMA Directive: Personnel Standards of Conduct*, FEMA Directive, 123-0-2-1, Revision 1 at 17. FEMA will take all appropriate action against employees who violate the provisions within the Hatch Act.

- All FEMA employees are expected to adhere to the Agency's *Core Values*, of "Compassion, Fairness, Integrity, and Respect." FEMA Publication 1, Core Values, FEMA No. FP 112-01, Catalog No. 10314-1 at 9. This includes "treating everyone impartially, offering unbiased and consistent assistance, and ensuring equal access to resources and tools." *Id*. at 11. FEMA will take all appropriate action against employees who do not adhere to the Agency's *Core Values*.

- All FEMA employees are expected to adhere to *FEMA Directive: Personnel Standards of Conduct* specifically requiring that, "All personnel will carry out their duties in a professional, respectful, and ethical manner, and will abide by this Directive and all FEMA and DHS policies and procedures, as well as all applicable laws and regulations pertaining to federal employee conduct." *FEMA Directive: Personnel Standards of Conduct*, FEMA Directive, 123-0-2-1, Revision 1 at 1. "All FEMA employees are subject to disciplinary action for misconduct…" *Id*. at 1-2.

- FEMA commits to facilitate adequate political-discrimination training for FEMA employees to ensure that none discriminate, encourage discrimination, or tolerate discrimination against FEMA aid recipients based on their political preferences.

    The United States and Ms. Criswell regret the actions giving rise to this case and agree with the State of Florida that those actions never should have occurred. We are also hopeful that, in light of all we have provided, the State of Florida and its people can be confident that FEMA is striving to avoid a repeat of the events giving rise to this case and that the agency is committed to the fair, compassionate, and even-handed delivery of services.

    Sincerely,

C. Salvatore D'Alessio, Jr.
2025.04.28 09:02:06 -04'00'

C. SALVATORE D'ALESSIO, JR.
Torts Branch Director